**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

MICA HOWARD,

Plaintiff,

-vs-

10-CV-06228-CJS

DOCTOR C. DEUEL, W. GOINS, Nurse Administrator, M. CULLY, Superintendent

Defendants.

DECISION and ORDER

INTRODUCTION

Mica Howard, ("Plaintiff") a prison inmate in custody of the New York State Department of Correctional Services ("DOCS")[1], is suing pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his Eighth Amendment rights by failing to provide him with adequate medical treatment. Now before the Court are Defendants' motions (Docket Nos. [#14] and [#19]) to dismiss for failure to state a claim.[2] For the reasons that follow, the applications are granted and Plaintiff's claim is dismissed without prejudice.

BACKGROUND

Unless otherwise noted, the following facts are taken from Plaintiff's Amended Complaint, and are presumed to be true for purposes of this Decision and Order. [#8]. On March 26, 2008, Dr. Deuel ("Deuel") had Plaintiff undergo "routine lab work." *Id.* On April 2, 2008, Plaintiff received a memo from Deuel, stating that the results of his testing

[1] After the motion was briefed, DOCS changed its name to New York State Department of Corrections and Community Supervision.

[2] Plaintiff purports to base his claim on equal protection, failure to protect, and denial of medical treatment. The Court liberally construes his claims to be a single Eighth Amendment claim for denial of medical treatment.

were acceptable. *Id.* On April 2, 2008 Deuel had Plaintiff undergo further testing. *Id.* On April 3, 2008, Deuel met with Plaintiff and told him that he had high blood pressure and needed to "slow down on [his] smoking." *Id.* Otherwise, Deuel did not specifically discuss the test results with him. *Id.*

On September 19, 2008, Deuel scheduled Plaintiff for additional blood work. *Id.* Specifically, the test that was performed was "Lipid Screen (Coronary Risk I), Glucose, fasting". From this, Plaintiff interprets that he was at a Coronary Risk I, which, according to the U.S. Department of Health and Human Services, is the highest risk category for a heart attack within ten years.[3] On September 23, 2008, the blood work report was completed. Complaint, Ex. 2 [#1]. *Id.* In Plaintiff's layman's opinion, he believes that the results show he had an increased risk for a heart attack. On September 25, 2008, Plaintiff received notice that he was scheduled to discuss his test results with Deuel. *Id.*, Ex. 3 [#1]. However, Plaintiff never met with Deuel or anyone else from the medical department to discuss his test results prior to November 5, 2008. Amended Complaint, 4. On that date, Plaintiff suffered a heart attack which resulted in open heart surgery. *Id.* at 5.

On September 5, 2010, Plaintiff filed his Amended Complaint. He alleges his blood work from April 2, 2008 onward showed high coronary risk factors and that Defendants kept this information from him. *Id.* He states that Defendants, specifically Deuel and Nurse Administrator Goins ("Goins"), knew of the results and did not provide appropriate diet orders or medication. *Id.* He alleges that his heart attack could have been avoided if Defendants' had provided him with medical treatment in April 2008. *Id.*

[3] According to the U.S. Dept. of Health and Human Services, NIH Publication No. 05-3290. Available at: http://www.nhlbi.nih.gov/health/public/heart/chol/wyntk.htm

On April 18, 2011, Defendants filed a 12(b)(6) motion to dismiss for failure to state a claim. Plaintiff filed a response on May 17, 2011.

ANALYSIS

Inasmuch as Plaintiff is proceeding *pro se,* this Court is mindful that,

> [w]hen considering motions to dismiss a pro se complaint such as this, "courts must construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks omitted). This is especially true when dealing with *pro se* complaints alleging civil rights violations. *See Weinstein v. Albright,* 261 F.3d 127, 132 (2d Cir. 2001). Accordingly, the plaintiffs' allegations in this case must be read so as to "raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks omitted).

*Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 145-146 (2d Cir. 2002).

The legal principles applicable to a 12(b)(6) application to dismiss for failure to state a claim are clear:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007)

(indicating that *Bell Atl. Corp. v. Twombly* adopted “a flexible ‘plausibility standard,’ which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]” as opposed to merely conceivable.), reversed on other grounds, *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).

The Court is limited as to what evidence it can consider in ruling upon a 12(b)(6) motion:

> In considering a motion under Fed.R.Civ.P. 12(b)(6) to dismiss a complaint for failure to state a claim on which relief can be granted, the district court is normally required to look only to the allegations on the face of the complaint. If, on such a motion, matters outside the pleading are presented to and not excluded by the court, the court should normally treat the motion as one for summary judgment pursuant to Fed.R.Civ.P. 56. In any event, a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact.
>
> In certain circumstances, the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6). Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered. In addition, even if not attached or incorporated by reference, a document upon which the complaint solely relies and which is integral to the complaint may be considered by the court in ruling on such a motion.

*Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (citations and internal quotation marks omitted).

*Exhaustion of Administrative Remedies*

Defendants assert that Plaintiff failed to exhaust his administrative remedies before commencing this action. Memorandum in Support re Motion to Dismiss for Failure to State a Claim, 5 [#20]. The Court agrees.

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted."* (emphasis added). With certain exceptions addressed below, such exhaustion of administrative remedies is mandatory. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("[E]xhaustion in cases covered by § 1997e(a) is now mandatory.") (citation omitted). "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." *Id.* The "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532. Generally in order to satisfy § 1997e(a), a plaintiff must use the DOCS's inmate grievance procedures:

> To initiate the process, an inmate must file a written complaint with the Inmate Grievance Resolution Committee ("IGRC"), a facility committee composed of inmates and appointed staff members. *See* N.Y.C.R.R. § 701.4–.5. The complaint must "contain a concise, specific description of the problem and the action requested." N.Y.C.R.R. § 701.7(a)(1)(i) (1998) (now codified as amended at N.Y.C.R.R. § 701.5(a)(2) (2007)). Second, the inmate can appeal an unfavorable IGRC determination to the superintendent of the facility. *See* N.Y.C.R.R. § 701.7(b) (1998) (now codified as amended and renumbered at N.Y.C.R.R. § 701.5(c) (2007)). Finally, an inmate can appeal an unfavorable superintendent's determination to the Central Office Review Committee ("CORC"). *See* N.Y.C.R.R. § 701.7(c) (1998) (now codified as amended and renumbered

at N.Y.C.R.R. § 701.5(d) (2007)); Directive No. 4040.

*Amador v. Andrews*, --- F.3d ---, 2011 WL 3629717 at *4 (2d Cir. 2011).

Plaintiff admits he failed to exhaust his administrative remedies prior to filing his § 1983 claim. Where an inmate fails to exhaust his or her administrative remedies in accordance with prescribed prison procedures, the following three-part inquiry is appropriate:

> The Court must ask whether administrative remedies were in fact available to the prisoner. The Court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. If the Court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the Court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements.

*Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004) (citations and internal quotation marks omitted); *See also*, *Brownell v. Krom*, 446 F.3d 305, 311 (2d Cir. 2006).

Here, the Court finds that Plaintiff had failed to exhaust his administrative remedies. First, there were administrative remedies available to Plaintiff. Second, Defendants raised the exhaustion defense in their Motion to Dismiss and there is no evidence that they took any action to inhibit Plaintiff’s exhaustion of remedies. Finally, there are no special circumstances in this case that justify Plaintiff’s failure to comply with procedural requirements. In that regard, Plaintiff’s statement that “I wasn’t told there was a problem, I cannot grieve it after the incident” is neither correct nor a special circumstance. Amended Complaint, 2. Consequently, Plaintiff was not justified in failing

to exhaust his administrative remedies prior to filing his § 1983 claim, and his claim must be dismissed without prejudice.

*Failure to Plead Personal Involvement By Cully or Goins*

Even assuming, *arguendo*, that Plaintiff had exhausted his administrative remedies, the Court finds that Plaintiff failed to state a claim against Superintendent Cully and Nurse Goins, since he has not plausibly pleaded that Cully or Goins were personally involved in the alleged Constitutional violation.

Plaintiff solely alleges that Cully is responsible based on his position as Superintendent. *See* Complaint, 11 [#1]. However, "[t]he doctrine of respondeat superior does not apply to § 1983 cases." *Allah v. Poole*, 506 F.Supp.2d 174, 193 (W.D.N.Y. 2007). A prerequisite for liability under a § 1983 claim is personal involvement by the defendants in the alleged constitutional deprivation. *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (dismissing the claim because plaintiff did not demonstrate that defendant was personally involved in depriving plaintiff of any constitutional right).

> The Second Circuit has found that the personal involvement of a supervisory defendant must be established by evidence that: "1) the defendant participated directly in the alleged constitutional deprivation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring."

*Reyes v. Beilein,* 2010 WL 5419033 at *3 (W.D.N.Y. Nov. 15, 2010) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). The facts alleged by Plaintiff do not

establish that Superintendent Cully participated in any of the complained of conduct. The only factual allegations against Cully are vague and conclusory. *See*, Complaint, 11 [#1]. As such, the Court finds that Plaintiff has not pleaded a plausible claim of personal involvement against Cully.

As for Nurse Goins, Plaintiff alleges, in his response to Defendants' Motion, that she "knows what goes on in her department and must give her approval to the doctor in charge before the doctor can act." Plaintiff's Response, 2 [# 23]. However, in the Plaintiff's Amended Complaint, he does not describe how Nurse Goins was personally involved in the alleged failure to provide medical treatment. He alleges, in conclusory fasion, that Goins knew his test results but did nothing; however, he does not indicate why it is plausible to believe that Goins was aware of his test results, or that she was responsible for prescribing medications for him. *See* Complaint, 11 and Amended Complaint, 5. Consequently, there are presently insufficient facts pled to plausibly hold Nurse Goins liable for the alleged conduct.

As for Plaintiff's official capacity claims, under the Eleventh Amendment, State officials can be sued in their official capacities for injunctive relief, but not for money damages. *See Fulton v. Goord*, 591 F.3d 37, 45 (2d Cir. 2009) (noting that "*Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), holds that in a suit against state officials in their official capacities, monetary relief (unlike prospective injunctive relief) is generally barred by the Eleventh Amendment," but that such immunity may be waived or abrogated in a particular case). Since Plaintiff is only suing for money damages, the official capacity claims must be dismissed.

## CONCLUSION

For the reasons discussed above, Defendants' motions to dismiss ([#14] & [#19]) are granted, and Plaintiff's complaint is dismissed without prejudice.

So Ordered.

Dated: Rochester, New York
October 12, 2011

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge